IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE SEQUOIAS - SAN FRANCISCO,<br><br>    Petitioner,<br><br>  v.<br><br>SEIU, UNITED HEALTHCARE<br>WORKERS - WEST ,<br><br>    Respondent.<br>_____ / | No. C 09-05279 WHA<br><br>ORDER ON CROSS MOTIONS<br>FOR SUMMARY JUDGMENT,<br>MOTION FOR ATTORNEY'S<br>FEES, AND VACATING HEARING |

**INTRODUCTION**

In this civil action to vacate an arbitration award pertaining to a claim of wrongful termination at a San Francisco retirement community, petitioner The Sequoias – San Francisco (the employer) and respondent SEIU, United Healthcare Workers – West (the union) have filed cross motions for summary judgment. The union also moves for an award of attorney's fees. For the reasons set forth below, the union's motion for summary judgment is **GRANTED**, while the employer's motion for summary judgment is **DENIED**. Because the employer did not act in bad faith, however, the union's motion for attorney's fees must also be **DENIED**. The hearing on these motions is **VACATED**.

**STATEMENT**

The Sequoias - San Francisco — the employer in this action — is a continuing-care retirement community that provides housing, medical care, and services for older adults (Lee Decl. ¶ 2). Among the facilities provided in the community is a restaurant-like dining room,

whose workers are represented by the union in this action, SEIU, United Healthcare Workers - West (*ibid.*).

On July 16, 2007, a dining room employee was terminated for several reasons connected to alleged poor performance (Harland Decl. ¶ 4, Exh. C). That same day, the union filed a grievance under the parties' collective bargaining agreement ("CBA") asserting wrongful termination (*id.* ¶ 5, Exh. D).

The CBA provides the following grievance procedure and amendment and waiver provisions (Lee Decl. ¶ 4, Exh. A, Tab 1) (emphasis added):

> SECTION 23. GRIEVANCE PROCEDURE & ARBITRATION
>
> \*      \*      \*
>
> (a) The union representative and department head will meet to discuss and resolve presenting issues prior to grievance being filed.
>
> (b) Grievances must be presented in writing within fourteen (14) calendar days of the date the disciplinary notice is provided to the employee.
>
> (c) In the event the authorized Union representative and the department head cannot adjust the matter, it shall be referred by the Union representative to the Executive Director. If the matter is not resolved the Union representative and the Executive Director, then they shall be joined by the Employer's Vice President of Operations in an attempt to resolve the matter at this step.
>
> (d) In the event the Employer's Vice President of Operations and the Union representative cannot effect a settlement of a grievance then the matter in dispute may be submitted by either or both parties to arbitration under the Voluntary Labor Arbitration Rules of the American Arbitration Association. *Any request for arbitration must be made within 60 (60) calendar days after filing of the original grievance or arbitration is waived.* When a matter is referred to arbitration hereunder by either party, the parties agree to join in a written submission defining the issue or issues to be arbitrated. The parties further agree to accept the arbitrator's award as final and binding upon them, provided that the arbitrator shall have no power to add to, subtract from, or alter any provision of this Agreement.
>
> (e) No arbitrator shall have the authority to render an award on a grievance that is untimely within the meaning of Section 23(b) or is based upon an untimely request for arbitration under Section 23(d). No arbitrator shall hear or entertain the merits of a grievance where there is a defense of timeliness until the arbitrator decides the timeliness issue.

2

> (f) *Time limits as outlined in Section 23 may only be extended if both parties agree to it in writing.*
>
> \*         \*         \*
>
> SECTION 26. AMENDMENT AND WAIVER
>
> This Agreement is subject to amendment, alteration, or addition only by a subsequent written agreement between, and executed by, the Employer and the Union. The waiver of any breach, term, or condition of the Agreement by either party shall not constitute a precedent in the future enforcement of all of its terms and conditions.

Under the terms of the CBA, several steps needed to be performed between the filing of the grievance and the request for arbitration (*see id.* § 23(c)). The parties then had *60 days* from the filing of the original grievance to request arbitration (*see id.* § 23(d)). Under these rules, it appears — in the instant case — that the union was required to request arbitration or secure an extension in writing signed by both parties by September 14, 2007 (60 calendar days after the grievance filed on July 16, 2007) or waive the right to arbitrate.

Instead, the parties met to review the grievance about a month after it was filed. On August 24, 2007, the employer sent the union a letter upholding its decision to terminate the employee (*id.* ¶ 6, Exh. E).[1] The union then sent the employer a letter, dated September 12, 2007, stating that it was "moving this Grievance to the next step" that it would contact the employer for additional meeting dates (*id.* ¶ 8, Exh. G). The union's next correspondence occurred on November 27, 2007 — more than two months after the 60-day arbitration deadline had passed (*id.* ¶ 9, Exh. H). This instigated a series of discussions and requests for information regarding the grievance spanning a six-month period from November 27, 2007, to June 6, 2008 (*id.* ¶¶ 9–16, Exhs. H–O). Finally, on June 10, 2008, nearly nine months after the arbitration deadline had passed, the union demanded arbitration pursuant to the CBA (*see id.* ¶ 17, Exh. P).

---

1   In her arbitral award, Arbitrator Bonnie Bogue found that the contents of the letter were sent to the union in an August 25 email, but the *signed* letter was not actually received by the union until it was faxed on September 12, 2007, two days before the 60-day arbitration deadline (Lee Decl. ¶ 5, Exh. B at 6).

One week prior to the arbitration hearing — scheduled for May 29, 2008 — the employer notified the union that it intended to assert a complete defense to arbitration, arguing that the union had waived its right to arbitrate due to its untimely request (*id.* at ¶ 20, Exh. S).  On August 17, 2009, Arbitrator Bonnie Bogue issued an award finding that the union's arbitration request was timely because "[b]y engaging in ongoing and frequent correspondence over several months, the Employer gave the Union ample reason to understand that the 60-day time period for proceeding to the arbitration step was being waived, or was considered tolled, because it was taking the Employer more than 60 days to complete the two management reviews" (Lee Decl. ¶ 5, Exh. B at 13).

In her award, Arbitrator Bogue found that Section 23(c) of the CBA imposed no time limits for the two steps of managerial review that must occur before a request for arbitration can be made under Section 23(d) (*id.* at 5–6).  She reasoned that Section 23(c)'s silence as to time on these two antecedent steps conflicted with the parties' clear intent to move grievances toward arbitration within 60 days, as required under Section 23(d) (*id.* at 11–12).  Since failure to meet the arbitration deadline resulted in the *union's* waiver of arbitration, and the timely completion of the antecedent steps *was as much within the control of the employer as with the union*, Arbitrator Bogue found that reading the CBA with no implicit requirement that the employer timely fulfill its own obligations or risk waiving its right to enforce the arbitration deadline would "lead[] to a harsh and nonsensical result" (*id.* at 11).  Arbitrator Bogue further found that "[a]ny contract interpretation that requires such a result is to be avoided, if the evidence supports an alternative interpretation that furthers the purpose of the parties' contract" (*id.* at 11).

Given these findings, Arbitrator Bogue found that while the union had largely acted expeditiously in moving the grievance procedure forward, the employer caused several critical delays, including not delivering its signed decision upholding the employee's termination until two days before the arbitration deadline (thereby making it impossible for the Union to timely complete the next step before the deadline) (*id.* at 12).  Arbitrator Bogue then applied the following reasoning (*id.* at 14-15) (emphasis added):

4

> *[The purpose of timeliness penalties is to] prevent stale grievances from being advanced to arbitration after evidence may have been lost and memories of witnesses have faded, to the prejudice [of] the employer's ability to defend its actions. . . .  The treatises on arbitration and reported cases also speak to the principle that the union and represented employees' access to arbitration should not be barred by an unreasonable or overly technical reading of the grievance procedure, with a strong presumption against forfeiture when the grievance has been processed in good faith.  That principle is particularly applicable in cases such as this, where the employer bears responsibility for delays in processing the grievance. . . . Accordingly, the evidence supports a finding that the Employer waived its right to enforce the 60-day time limit for taking the case to arbitration, when it did not complete its own obligations under § 23(c) in time to allow the process to be completed within the 60-day period contemplated by the contract. Or, in the alternative, the running of the 60 days is deemed to be tolled as of the date when the Union moved the matter to the next step until the date when the Employer completed that step.*

## ANALYSIS

**1.   SUMMARY JUDGMENT STANDARD**

Summary judgment must be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FRCP 56.  A district court must determine, viewing the evidence in the light most favorable to the non-moving party, whether there is any genuine issue of material fact.  *Giles v. General Motors Acceptance Corp.*, 494 F.3d 865, 872 (9th Cir. 2007).  A genuine issue of fact is one that could reasonably be resolved, based on the factual record, in favor of either party.  A dispute is "material" only if it could affect the outcome of the suit under the governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

**2.   STANDARD OF REVIEW OF AN ARBITRAL AWARD**

The Federal Arbitration Act ("FAA") has nourished a "federal labor policy [that] favors the resolution of disputes through arbitration; thus, judicial scrutiny of an arbitrator's decision is extremely limited."  *S. Cal. Gas Co. v. Utility Workers Union of Am., Local 132, AFL-CIO*, 265 F.3d 787, 792 (9th Cir. 2001).  Arbitral awards enjoy a degree of deference unprecedented among Article III courts; "[c]ourts . . . do not sit to hear claims of factual or legal error by an arbitrator as

5

an appellate court does in reviewing decisions of lower courts." *Hawaii Teamsters & Allied Workers Union, Local 996 v. United Parcel Serv.*, 241 F.3d 1177, 1180 (9th Cir. 2001) (citing *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987)). Indeed, courts must refuse to vacate an arbitral award "even if [they] believe that the decision finds the facts and states the law erroneously." *Stead Motors of Walnut Creek v. Auto. Machinists Lodge No. 1173, Int'l Ass'n of Machinists & Aerospace Workers*, 886 F.2d 1200, 1204 (9th Cir. 1989) (en banc). In sum, an arbitration award will be upheld as long as it "draws its essence" from the CBA, which merely requires that it "represent[s] a 'plausible interpretation of the contract.'" *Aramark Facility Servs. v. Serv. Employees Int'l Union, Local 1877, AFL CIO*, 530 F.3d 817, 823 (9th Cir. 2008) (quoting *Phoenix Newspapers, Inc. v. Phoenix Mailers Union Local 752*, 989 F.2d 1077, 1080 (9th Cir. 1993)).

Directly pertinent to the issues raised in the instant case, where the arbitrator interprets a CBA in a way that stretches beyond the express terms of the contract, her decision will be upheld where it is nevertheless based on an attempt to give proper meaning and effect to the CBA. The Ninth Circuit has observed that, "[u]nlike the commercial contract, which is designed to be a comprehensive distillation of the parties' bargain, the collective bargaining agreement is a skeletal, interstitial document. . . . The labor arbitrator is the person the parties designate to fill the gaps; for the vast array of circumstances they have not considered or reduced to writing, the arbitrator will *state the parties' bargain*." *Stead Motors*, 886 F.2d at 1205 (emphasis added). "The labor arbitrator's source of law is not confined to the express provisions of the contract, as the industrial common law — the practices of the industry and the shop — is equally a part of the collective bargaining agreement although not expressed in it." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 581–582 (1960). As such, the arbitrator may use her particularized knowledge of the relevant industry to adapt the CBA to unforeseeable circumstances under which a dispute may arise. "As long as a plausible solution is available within the general framework of the agreement, the arbitrator has the authority to decide what the

6

parties would have agreed on had they foreseen the particular item in dispute." *Desert Palace, Inc. v. Local Joint Executive Bd. of Las Vegas*, 679 F.2d 789, 793 (9th Cir. 1982).

That said, the arbitrator is not entitled to "ignore the plain language of the contract, . . . and instead follow h[er] own whims and biases . . . ". *Hawaii Teamsters*, 241 F.3d at 1181 (citations and quotation marks omitted). "Similarly, an arbitrator has no authority to ignore the plain language of a collective bargaining agreement that limits the scope of h[er] authority." *Ibid.*

### 3. DISPUTED ISSUES OF FACT

This order emphasizes that neither side disputes any material issues of fact. While each party paints a different picture of Arbitrator Bogue's reasoning and the circumstances leading up to arbitration, they both draw from the same palette. As such, this action is ripe for adjudication on the legal grounds set forth below.

### 4. THE ARBITRAL AWARD AND THE CBA

The parties predictably disagree as to whether Arbitrator Bogue ignored the plain language of the agreement and rendered a decision based on her own sense of industrial fairness (Employer Br. 7; Union Br. 8-9).

On one hand, the employer contends that the 60-day period for requesting arbitration in the CBA was clear and unequivocal, and that Arbitrator Bogue "expressly found the Agreement clearly and unambiguously stated" this requirement (Employer Br. 7). The employer further argues that Arbitrator Bogue's express desire to avoid "'harsh and nonsensical results'" constituted the meting out of "her 'own brand of industrial justice'" (*id.* at 8). Finally, the employer cites almost exclusively to *out-of-circuit* authority standing for the basic proposition that an arbitrator cannot ignore the plain language of the contract (*ibid.*).

The union, by contrast, contends that Arbitrator Bogue properly interpreted the contract when determining that the 60-day period did not bar arbitration, and cites *binding* authority for the proposition that when an arbitrator lists and discusses the relevant contract clauses in her decision — as Arbitrator Bogue did here — the award "draws its essence" from the CBA (Union Br. 9). Being bound by Ninth Circuit law, this order must agree.

7

The Ninth Circuit has repeatedly upheld arbitral awards in circumstances similar to this case. In *Virginia Mason Hospital v. Washington State Nurses Association* — a prime example — the union and the employer, a hospital, submitted to the arbitrator a dispute over whether the employer had the authority to implement unilaterally a mandatory flu immunization program. The arbitrator rescinded the immunization program based on the "CBA's preamble and union recognition clause, which he read as requiring the hospital to bargain collectively with [union] representatives over all terms and conditions of employment." 511 F.3d 908, 912 (9th Cir. 2007). The arbitrator also concluded that the immunization program did not fall within the CBA's management rights clause, which allowed hospital management to take certain unilateral actions. The CBA at issue included an *express* provision "stating that all matters not specifically discussed during CBA negotiations or included in the CBA were waived as matters of mandatory bargaining . . .". *Id.* at 912–13. Nevertheless, the arbitrator "determined that, even though the subject of flu immunization was *not covered* in the . . . CBA . . . , [the union's] filing of a grievance over the immunization policy was sufficient negotiation or discussion of the issue such that it was not waived." *Id.* at 913 (emphasis added).

The hospital challenged the award "on the ground that the arbitrator exceeded his authority by failing to apply relevant terms of the CBA and by reading additional terms into that agreement that were not part of its plain language . . . ." *Ibid.* The Ninth Circuit disagreed. In upholding the arbitrator's decision, the court noted that "[t]he arbitrator did not ignore the plain language of [the disputed] clauses. To the contrary, he listed all of them in . . . his written decision, and he devoted entire sections of that decision to analysis of [those] clauses." *Id.* at 914. Moreover, although the arbitrator arguably imposed a duty to bargain despite the explicit disclaimer in the CBA that such duty only applied to matters discussed during CBA negotiations, the court found that the arbitrator did *not* ignore the plain language of the agreement: "When an arbitrator uses his knowledge of the industrial common law to infer a requirement from a CBA where the CBA is *silent on that particular point* . . . the arbitrator is not adding new terms to the

8

agreement but is simply finding the inferred term already in the agreement, albeit only implied." *Id.* at 915 (emphasis added).

Given this holding, it is clear that when an arbitrator supplements otherwise clear language during the course of interpreting a CBA, the arbitrator is *not* ignoring the plain language of the contract. The Ninth Circuit has repeatedly reaffirmed this principle. *See Hawaii Teamsters*, 241 F.3d at 1179-80, 1182 (upholding an arbitral award terminating an employee on an unenumerated ground despite the fact that the employees' actions did not fall within the seven enumerated grounds colloquially referred to as "cardinal sins"); *SFIC Properties, Inc. v. Int'l Ass'n of Machinists & Aerospace Workers, Dist. Lodge 94, Local Lodge 311*, 103 F.3d 923, (9th Cir. 1996) (noting that unless the CBA "expressly provide[s]" that the arbitrator's action is prohibited, the reading into the agreement of an additional term will be upheld); *Holly Sugar Corp. v. Distillery, Rectifying, Wine & Allied Workers Int'l Union, AFL-CIO*, 412 F.2d 899, 903 (9th Cir. 1969) (upholding an arbitral award tolling a 30-day period required by the CBA where the employer failed to notify the union concerning the dispute at issue).

Under the weight of this authority, Arbitrator Bogue's award must be upheld. Simply put, as in *Virginia Mason*, Arbitrator Bogue discussed the disputed clauses at length, and considered both parties' interpretations of those clauses before rendering her decision. Her decision, therefore, draws its essence from the CBA. *See Virginia Mason*, 511 F.3d at 913-14. Although the employer contends that "Arbitrator Bogue expressly found that the Agreement clearly and unambiguously stated that . . . a request for arbitration must be made within 60 calendar days of the filing of the grievance[,]" this is not what she said (Employer Br. 7). In the award, Arbitrator Bogue stated that the contract "*appears to be* clear and unambiguous . . . . *However*, reading the grievance procedure to require the demand for arbitration be made before the lower steps of the grievance procedure are completed leads to harsh and nonsensical results. Any *contract interpretation* that requires such a result is to be avoided . . . ." (Lee Decl. ¶ 5, Exh. B at 11) (emphasis added). In other words, Arbitrator Bogue interpreted the CBA provisions in light of each other; her interpretation of the 60-day requirement was informed by the provision requiring

9

1  antecedent steps to be taken before a request for arbitration could be made. By reading a tolling
2  requirement into the CBA based on the principle of avoiding forfeiture of the right to arbitrate,
3  Arbitrator Bogue simply "infer[red] a requirement . . . where the CBA is silent on that particular
4  point . . . ." *Virginia Mason*, 511 F.3d at 915. Under our circuit's case law, Arbitrator Bogue's
5  award must be upheld.

   None of the out-of-circuit decisions cited by the employer compels a contrary result.
Aside from being non-binding, all involved arbitral awards in which the arbitrator's decision
contradicted the plain and *undisputed* meaning of the agreements. *See, e.g.*, *Anheuser-Busch, Inc. v. Beer, Soft Drink, Water Local Union No. 744, AFL-CIO*, 280 F.3d 1133, 1140 (7th Cir. 2002) (noting that "the parties to the contract agree . . . that the document at issue in this case is neither ambiguous nor incomplete"); *Wyandot, Inc. v. Local 227, United Food & Commercial Workers Union*, 205 F.3d 922, 930 (6th Cir. 2000) (rejecting an award in part on the ground that, having made one finding regarding the contract, the arbitrator was not allowed to draw an opposite conclusion); *Excel Corp. v. United Food & Commercial Workers Int'l Union, Local 431*, 102 F.3d 1464, 1468 (8th Cir. 1996) (vacating an award on the grounds that the arbitrator's conclusion cannot contradict a result mandated by his findings); *Leed Architectural Prods., Inc. v. United Steelworkers of Am., Local 6674*, 916 F.2d 63, 65 (2d Cir. 1990) (vacating an arbitral remedy that directly contradicted the available remedies under the CBA); *Delta Queen Steamboat Co. v. Dist. 2 Marine Eng'rs Beneficial Ass'n*, 889 F.2d 599, 604 (5th Cir. 1989) (vacating an award that contradicted a predicate finding made by the arbitrator).

   Additionally, all of the employer's remaining arguments are incorrect in light of the foregoing discussion. *First*, while the employer contends that a waiver of the right to invoke an arbitrability defense must be in writing, nowhere in the CBA did the parties agree that such a waiver must be in writing — Section 23(f) only requires that *extensions* be in writing. *Second*, while the employer contends that Arbitrator Bogue was not allowed to toll the limitations period under the language of the CBA, the Ninth Circuit rejected this argument in *Holly Sugar*, 412 F.2d at 903, and such a requirement does not contradict any express provision in the agreement. *Third*,

10

the Ninth Circuit decisions cited herein make clear that the arbitrator's interstitial interpretation of a CBA does not amount to "add[ing] to, subtract[ing] from, or alter[ing] any provision of the Agreement" (Employer Br. 12). In sum, all of the employer's arguments fail, and the union's motion for summary judgment must be **GRANTED**.

### 5. ATTORNEY'S FEES

The union separately moves for attorney's fees based on the employer's alleged "vexatious appeal" of the arbitral award (Union Br. 10). Such fees, however, are only warranted if "the losing party acted in bad faith, vexatiously, wantonly, or for oppressive reasons[]." *Virginia Mason*, 511 F.3d at 917 (quoting *Sheet Metal Workers' Int'l Ass'n Local Union No. 359 v. Madison Indus., Inc.*, 84 F.3d 1186, 1192 (9th Cir. 1996) (quotation marks omitted)).

The record does not support a finding of bad faith. Here, the employer understandably believed that it was entitled to a clear-cut arbitration deadline under the terms of the CBA. As such, the union's request for attorney's fees is **DENIED**.

### CONCLUSION

For the reasons set forth above, the union's motion for summary judgment is **GRANTED**. The employer's motion for summary judgment is **DENIED**. Since the record does not support a finding of bad faith, the union's motion for attorney's fees is also **DENIED**. The hearing on these motions scheduled for March 25, 2010, is **VACATED**. Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

Dated: March 22, 2010.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

11